UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMES BURGESS, ) | |
| ) | |
| *Plaintiff*, ) | No. 1:16-cv-210-PLR-SKL |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| *Defendant*. ) | |

## REPORT AND RECOMMENDATION

Plaintiff James Burgess ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 14 & 16] with supporting briefs [Docs. 15 & 17]. Oral argument on the pending motions was heard on February 16, 2017. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings be **DENIED**; (2) the Commissioner's motion for summary judgment be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

### I. ADMINISTRATIVE PROCEEDINGS

As agreed by the parties, and as reflected in the transcript of the administrative proceedings [Doc. 10 ("Tr.")], Plaintiff filed applications for DIB and SSI on June 28, 2012, alleging disability beginning March 3, 2012. After Plaintiff's claims were denied initially and upon reconsideration, a hearing on Plaintiff's claims was held before an administrative law judge

("ALJ") during which Plaintiff was represented by counsel. The ALJ issued a decision finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") (Tr. 11-20). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

As agreed by the parties and reflected in the record, Plaintiff was born in July 1975 and had a work history that included industrial maintenance work, which was determined to be medium, semi-skilled work (Tr. 19, 48, 227-37). The ALJ noted that Plaintiff was 36 years old on the alleged disability onset date, which is defined as a younger individual, had at least a high school education, and was able to communicate in English (Tr. 19).

### B. Medical Records

Plaintiff's primary complaints concern neck and back pain. He alleges disability due to several conditions including degenerative disc disease of the cervical and lumbar spine, obesity, hypertension, diabetes with neuropathy, the lingering effects of right forearm laceration, and a history of hernia. Both parties summarized portions of the medical records in their respective briefs, which will not be repeated herein, but all germane records have been reviewed. As indicated during the hearing, the parties do not dispute the records; rather, they disagree on the conclusions drawn from the records by the ALJ.

### C. Hearing Testimony

At the January 8, 2015 hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing (Tr. 25-52) has been carefully reviewed, but the testimony need not be repeated herein.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2016 (Tr. 13). At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since March 3, 2012, the alleged onset date (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, hypertension, diabetes mellitus, heel spurs, status post remote hand laceration with residual neuropathy, and obesity (Tr. 13). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 13-14). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work with additional postural and manipulative limitations (Tr. 14-19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 19). At step five, after considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") as a framework for her decision and considering the testimony of the VE, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 19-20). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time from the alleged onset date through the date of the ALJ's decision (Tr. 20).

4

## IV. ANALYSIS

Plaintiff mainly argues that the ALJ erred in evaluating the medical opinions, and thus the RFC is not supported by substantial evidence. Specifically, Plaintiff asserts the ALJ improperly gave greater and substantial weight to the opinions of the non-treating, state agency medical consultants, while failing to articulate good reasons for discounting the opinions of the treating physicians in finding Plaintiff retained the RFC to perform a reduced range of light work. Defendant responds that the ALJ properly evaluated the medical opinions and substantial evidence supports the RFC.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the

5

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[1] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013);

---

[1] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

*Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). A court will not disturb an ALJ's RFC determination as long as the finding is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### B. Treating Source Opinion

In considering a claim for disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c)(2). But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ is not required to explain how she considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's medical opinion."). "[A] properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians[, but] the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving

7

such an opinion little weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013) (citations omitted).

The parties agree that Plaintiff first began seeing his primary care physician, Dr. Raphael Lanade, in January 2012. In June 2012, Plaintiff sought pain management services from Dr. Gregory Ball (Plaintiff's treating pain management specialist) on referral from Dr. Lanade (Tr. 282-86). While under Dr. Ball's care for pain management, Plaintiff also received medication refills from Dr. Lanade in June, September, and December 2012 (Tr. 459-68). Plaintiff returned to Dr. Lanade on July 19 and July 29, 2013 (Tr. 450-54). At his July 29 visit, Plaintiff told Dr. Lanade that he had not been able to work, had applied for disability due to chronic low back pain, and needed disability forms filled out (Tr. 450). Dr. Lanade's physical examination findings that day noted lumbosacral tenderness and morbid obesity, but found Plaintiff had a full range of motion in his back and his sensation was intact (Tr. 450). Dr. Lanade gave Plaintiff prescriptions for medications and completed a "Medical Source Statement (Physical)" form provided by Plaintiff's counsel (Tr. 18, 341-42, 451).

In the form, Dr. Lanade checked boxes to render an opinion that Plaintiff was physically capable of sitting only one hour in an average eight-hour workday, and could not stand or walk for any amount of time (Tr. 341). Dr. Lanade also opined Plaintiff could lift/carry up to five pounds continuously, 10 pounds frequently, and 20 pounds occasionally, and could bend, push and pull frequently (Tr. 341). Dr. Lanade opined Plaintiff could use his hands continuously for gross and fine manipulation (Tr. 341). Dr. Lanade also opined Plaintiff experienced severe pain, would miss more than two days of work per month, would needed to lie down twice each day for 10 minutes, would need to elevate his legs for eight hours each day, and would also need an unscheduled 30 minute break every two hours (Tr. 342). The ALJ gave Dr. Lanade's opinion,

which is quite restrictive, "minimal" weight because "it was rendered immediately after a 7-month absence from treatment, is inconsistent with the corresponding examination findings of full lumbar range of motion and intact sensation, and is drastically limiting in comparison to all the other medical opinions (including the claimant's pain management doctor)." (Tr. 18 (citations to exhibits omitted))].

Although in July 2013 Dr. Lanade instructed Plaintiff to follow up in two months, Plaintiff did not return for almost a year (Tr. 439-41). At his June 2014 visit, Plaintiff told Dr. Lanade that he had "not been taking his medications for the past several months" because he was in jail (for failure to pay child support) (Tr. 439).[2] Plaintiff returned to Dr. Lanade in June, August, October, and November 2014 for medication refills (Tr. 425-38). His physical examinations at these visits indicate he had full range of motion, no tenderness in his back, and no complaints of pain (Tr. 425-41).

Plaintiff also returned to see Dr. Ball in August 2013, his first visit since October 2012 (Tr. 379-82). He told Dr. Ball that he had moved back from Kentucky after a job there "did not work out" (Tr. 379; *see also* 314, 384). Plaintiff reported he had started work at Amazon in Chattanooga but only worked at Amazon for a week because his severe back pain caused him to quit (Tr. 379). Plaintiff reported increased back, lower extremity, and neck pain with numbness in the right thigh (Tr. 379). Plaintiff also reported he had lost his insurance but recently re-obtained insurance (Tr. 379). He states he had been unable to return to pain management without insurance and that he had been using over-the-counter medication (Aleve) for pain, though he found it not helpful (Tr. 379). He also reported difficulty with prolonged standing

---

[2] Plaintiff apparently was incarcerated for about three months. While Plaintiff argued (without proof) that it is nearly impossible to get narcotic medication in jail, he admitted during the hearing he has no records of seeking medical care available while in jail.

9

because of his back pain (Tr. 379). His examinations in August and September 2013 showed normal gait, intact sensation, normal muscle strength, negative straight leg raising tests, and full lumbar range of motion with only mild pain at extreme range of motion (Tr. 375-82). His September 2013 lumbar spine MRI scan showed lumbar spine degenerative disc disease and facet joint arthropathy with findings most pronounced at the L5-S1 where there was mild to moderate encroachment on the left-sided L5 nerve and descending right-sided S1 nerve roots (Tr. 402-03). In August and September 2013, Dr. Ball noted Plaintiff was unemployed but only restricted to "regular duty" (Tr. 375, 380).

The record contains opinions from treating, examining, and non-examining medical sources. Plaintiff's main argument is that the ALJ erroneously assigned greater weight to the opinions of the examining and non-examining medical consultants than the "minimal" weight she gave to the opinion of Dr. Lanade. The ALJ gave "some" weight to the opinion of Dr. Thomas Mullady, the physical consultative examiner, but rejected his findings regarding limited right hand manual dexterity. The ALJ gave "greater weight" to the opinions of Dr. Ball, consultative medical examiner Dr. Stephen Goewey, and the non-examining state agency consultants, finding them generally consistent with the lifting/carrying requirements of light work. The ALJ, however, also determined these opinions did not consider adequately Plaintiff's "partially credible" complaints of pain, the residual effects of his right hand injury, or the effects

10

of his obesity (Tr. 18).³ The ALJ assigned "substantial weight" to the state agency, non-examining medical consultants but also assigned additional restrictions limiting Plaintiff to frequent handling, fingering and feeling with the right hand (Tr. 18).

I **FIND** the ALJ's decision describes sufficient evidence to support the RFC and demonstrates a proper evaluation of the medical opinions and evidence. The ALJ properly noted an extended absence in Dr. Lanade's treatment of Plaintiff. The ALJ also properly noted that Dr. Lanade's extremely limiting opinion was inconsistent with his corresponding examination findings of full lumbar range of motion and intact sensation and was much more limiting than the other medical opinions. The ALJ discussed in her decision the evidence that she considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, the effects of treatment, the reports of daily activities, recorded observations, and other information. These are all appropriate types of relevant evidence that the

---

³ Recently, the SSA eliminated the use of the term "credibility" because regulations do not use this term and subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). An ALJ's credibility analysis or, as it is now called, subjective symptom evaluation, is "inherently intertwined" with the RFC assessment. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at *10 n.7 (E.D. Tenn. May 18, 2016) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")). Plaintiff has not directly challenged the ALJ's determination that his statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible, although he seems to question in passing whether her credibility finding was based merely on his incarceration [Doc. 15 at Page ID # 534]. However, the ALJ's credibility determination does not appear to be based on Plaintiff's incarceration to the extent Plaintiff is attempting to make such a claim. The determination of Plaintiff's "credibility" as to his allegations of disabling pain is left to the ALJ and is generally binding on the reviewing court. *See*, e.g., *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones*, 336 F.3d at 476. Where, as here, the ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See, e.g., King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013); *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).

ALJ must consider in evaluating medical opinions and formulating an RFC.  *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Plaintiff disagrees with the ALJ's conclusion that Dr. Lanade's restrictions were not consistent with the medical evidence.  Plaintiff bases this on Dr. Lanade's findings of right hand numbness, right hand neuropathy, chronic low back pain with tenderness, and evidence of treatment from Dr. Ball, a pain specialist, finding positive straight leg raise tests, limited range of motion, and diagnostic imaging of degenerative disc disease in Plaintiff's lumbar and cervical spine.  As argued by the Commissioner, however, the ALJ accounted for these findings in Plaintiff's RFC by limiting him to light work with additional postural and manipulative limitations.

Plaintiff also contends the ALJ improperly considered his generally conservative treatment and gaps therein.  Again as argued by the Commissioner, Plaintiff told Dr. Ball and Dr. Lanade that he was taking only over-the-counter medications during the gap in treatment, and there is no evidence he required any emergency care during that time, which supports the ALJ's conclusion that Plaintiff's treatment was conservative and undermines Plaintiff's claims of disabling pain.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) ("The ALJ noted that the records indicate [the plaintiff] received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion.") (citing *Lester v. Soc. Sec. Admin.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment)); *McKenzie v. Comm'r of Soc. Sec,* 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non[-]aggressive treatment."); 20 C.F.R. § 404.1527(c)(2)(ii) ("We will look at the treatment the source has provided . . . .")).

The ALJ correctly also observed that the record was devoid of any recommendation or opinion from a treating source for spinal surgery (Tr. 17). Plaintiff argues this and other observations of the ALJ minimalized the nature of the treatment provided by Dr. Ball. Contrary to Plaintiff's position, I **FIND** the ALJ properly took note of the procedures performed by Dr. Ball, noting they improved Plaintiff's pain, and that his examinations showed mostly minimal findings through 2014 (*see, e.g.*, Tr. 17-18, 354-56, 358-62, 367, 388-89, 393-94). Likewise, the ALJ properly noted the examinations by the physical consultative examiners showed mostly mild findings (*see, e.g.*, Tr. 15-16, 18, 273-75, 337-39).

The ALJ also considered Dr. Ball's October 2012 restriction that Plaintiff could not lift more than 25 pounds (Tr. 317), and gave it greater weight than the more restrictive limitations opined by Dr. Mullady (Tr. 18, 275). As argued by the Commissioner, and although Dr. Ball did not perform a formal functional capacity evaluation or address Plaintiff's ability to sit, stand, or walk, the ALJ reasonably gave greater weight to Dr. Ball's opinion in this regard because she found it was consistent with the other evidence of record, including Dr. Ball's treatment notes.

Plaintiff also argues that the ALJ's finding conflicts with Dr. Ball's notes two years later on October 8, 2014 that Plaintiff had "some difficulty" and "much difficulty" with certain tasks (Tr. 355). It appears these assessments of difficulty were Plaintiff's self-reports, as argued by the Commissioner, which the ALJ also considered in determining Plaintiff's RFC. Further, the ALJ addressed and properly considered the notations in Dr. Ball's records (where instead of continuing to finds Plaintiff had "regular duty" status and instead had "disabled" status) because the issue of whether a claimant is disabled under the Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *see also* SSR 06-03p, 2006 WL 2329939, at * 3 (Aug. 9, 2006).

To the extent Plaintiff argues that the ALJ erred in evaluating the opinions of the examining and non-examining sources, such sources are not entitled to controlling weight and the ALJ is not required to give "good reasons" for the weight given to such sources' opinions. I **FIND** that the ALJ adequately explained the conflicts among the medical source opinions and the RFC given to Plaintiff and that she was not required to do more. A properly balanced analysis, as was performed by the ALJ in this case, can allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (observing that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources") (citing SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996)); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record.").

Notwithstanding Plaintiff's argument to the contrary, the ALJ adequately considered the evidence regarding Plaintiff's testimony about his attempt to work at Amazon and the gaps in his treatment, which include some inconsistencies in the record about a job in Kentucky, incarceration, and/or a lack of insurance. Specifically, as to the argument that the ALJ did not mention the one-week Amazon job attempt and Plaintiff's testimony related thereto in her written decision, it is not necessary for the ALJ to mention every piece of evidence that goes into her consideration of the claim. *See, e.g.*, *Boseley v. Comm'r of Soc. Sec.,* 397 F. App'x 195, 199

14

(6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (citation omitted); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record); *Higgs v. Bowen,* 880 F.2d 860, 864 (6th Cir. 1988) (rejecting claimant's argument that the administrative agency had to spell out in its opinion the weight attached to claimant's husband's testimony, where the agency reviewed the "entire record which was before the administrative law judge").

The ALJ's decision discusses the evidence that she considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, diagnostic imaging, the effects of treatment, the reports of daily activities, and other observations. These are all the appropriate types of relevant evidence that the ALJ must consider in evaluating medical opinions and formulating an RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). I **FIND** the ALJ's narrative discussion described sufficient evidence to support her RFC determination and her evaluation of the medical evidence and opinions.

I also **FIND** that the ALJ properly applied the factors for determining what weight to give Dr. Lanade's opinion, s*ee* 20 C.F.R. § 404.1527(c)(2), and that she explained her reasons for giving it minimal weight both in the paragraphs in which she directly discussed Dr. Lanade's opinion and elsewhere in her decision. Contrary to Plaintiff's contentions, the ALJ also appropriately considered the opinions of Dr. Ball and the state agency sources and included

limitations in the RFC that reflected Plaintiff's credible limitations. Consequently, I **FIND** that the ALJ's RFC determination is supported by substantial evidence.

Accordingly, because the ALJ's hypothetical question included the limitations that she found credible and incorporated into her RFC determination, the ALJ could rely on the VE's testimony to support the finding that Plaintiff could perform jobs that exist in sufficient number in the national economy. *See Graley v. Comm'r of Soc. Sec.*, 646 F. App'x 414, 417 (6th Cir. 2016); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Thus, I **CONCLUDE** that the ALJ's determination that jobs existed in significant numbers in the national economy that Plaintiff could perform was supported by substantial evidence in the record.

An ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform a reduced range of light work. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence. Because the ALJ reached her decision using correct legal standards and because those findings are supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *See, e.g., Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (Citation and internal quotation marks omitted)).

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[4] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).